1 | **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
JOHN T. JASNOCH (CA 281605)
2 | 600 W. Broadway, Suite 3300
San Diego, CA 92101
3 | Telephone: 619/233-4565
619/233-0508 (fax)
4 | jjasnoch@scott-scott.com

5 | *Attorneys for Plaintiff Ani Hovhannisyan*

6 | [Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANI HOVHANNISYAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VAXART, INC., ARMISTICE CAPITAL, LLC, CEZAR ANDREI FLOROIU, WOUTER W. LATOUR, M.D., STEVEN J. BOYD, and KEITH MAHER, M.D.,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMAND |

Plaintiff Ani Hovhannisyan ("Plaintiff") alleges the following based on the investigation conducted by his counsel, which included, among other things: (i) documents filed publicly by Vaxart, Inc. ("Vaxart" or the "Company") with the U.S. Securities and Exchange Commission ("SEC") and other regulators; (ii) press releases, presentations, and media reports issued and disseminated by the Company; (iii) analyst and media reports concerning Vaxart; and (iv) other public information regarding the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This securities class action is brought on behalf of all persons or entities that purchased or otherwise acquired Vaxart common stock between June 25, 2020 and July 25, 2020, inclusive (the "Class Period").  The claims asserted herein are alleged against Vaxart, certain of the Company's current and former senior executives and directors (together, the "Vaxart Defendants"), and Armistice Capital LLC ("Armistice Capital"), Vaxart's majority shareholder during the Class Period (collectively, "Defendants"), and arise under §§10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. Vaxart is a small clinical-stage biotechnology company primarily focused on the development of oral recombinant vaccines based on its proprietary oral vaccine platform.  Its vaccines are expected to be administered by tablet rather than by injection.  Vaxart has approximately 15 employees and has never successfully brought a vaccine to market.

3. During the Class Period, Defendants engaged in a naked "pump and dump" scheme to inflate the share price of Vaxart by exploiting the COVID-19 crisis.  As the global pandemic began to grip the world, Vaxart made a series of misleading statements to investors designed to create the impression that it was at the forefront of the effort to develop a COVID-19 vaccine and was a major player in the U.S. government's effort to develop a vaccine, "Operation Warp Speed."

4. The point of this scheme was to rapidly inflate the price of Vaxart stock and enrich Defendants, including Vaxart's hedge fund owner, Armistice Capital, which acquired a majority interest in the Company in 2019.  At the beginning of 2020, prior to the commencement of the

schemed alleged herein, Vaxart had a market capitalization of less than $20 million and its stock traded around $0.35 per share.  As Defendants exploited the COVID-19 pandemic with a series of statements pumping Vaxart's vaccine efforts, the Company's share price skyrocketed to close at $16.97 on July 14, 2020, or *48 times higher* than its stock price at the start of the year.

5. Defendants moved aggressively to exploit the stock inflation they created.  On June 8, 2020, shortly prior to the start of the Class Period, Vaxart changed the terms of its warrants agreements with Armistice Capital, making it easier for the hedge fund to rapidly acquire nearly 21 million shares at prices as low as $0.30 a share.

6. Then, on June 25, 2020, Vaxart issued an announcement claiming that it had signed a letter of intent with another company that might help it mass-produce a COVID-19 vaccine.  Vaxart's shares nearly doubled that day.

7. The next day, June 26, 2020, Vaxart issued a misleading press release that claimed Vaxart had been selected for Operation Warp Speed.  Its shares instantly doubled again.  Beginning *the same day*, and continuing through June 29, 2020, Armistice Capital exercised its warrants to acquire to buy nearly 21 million Vaxart shares for either $0.30 or $1.10 a share – purchases it would not have been able to make as quickly had its agreement with Vaxart not been modified weeks earlier.

8. Armistice Capital then immediately sold the shares at prices from $6.58 to $12.89 a share.  The hedge fund's profits were immense: more than $197 million.

9. Then, on July 25, 2020, *The New York Times* published an article entitled, "Corporate Insiders Pocket $1 Billion in Rush for Coronavirus Vaccine."  Among other things, the article revealed that: (i) Vaxart had not been selected by the U.S. government to produce a COVID-19 vaccine as part of Project Warp Speed; (ii) the U.S. government did not have a funding agreement with Vaxart; (iii) some officials at the Department of Health and Human Services have grown concerned about whether companies, including Vaxart, are trying to inflate their stock prices by exaggerating their roles in Operation Warp Speed; and (iv) Vaxart's hedge fund owner had been engaging in highly questionable transactions, including the June 8, 2020 change to its warrants and subsequent sales of enormous amounts of stock.

10. In response to this news, the price of Vaxart shares fell 11% on July 27, 2020.

**JURISDICTION AND VENUE**

11. The claims asserted herein arise under and pursuant to §§10(b), 20(a), and 20A of the Exchange Act (15 U.S.C. §§78j(b), 78t(a), and 78t-1) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

12. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

13. Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Vaxart maintains its headquarters in this District.

14. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and facilities of national securities markets.

**PARTIES**

15. Plaintiff Ani Hovhannisyan purchased Vaxart common stock at artificially inflated prices during the Class Period, as reflected in his certification submitted herewith, and was damaged as a result of the violations of the federal securities laws alleged herein.

16. Defendant Vaxart is a Delaware corporation with its corporate headquarters in South San Francisco, California. Vaxart purports to be a clinical-stage biotechnology company primarily focused on the development of oral recombinant vaccines based on its proprietary oral vaccine platform. It started trading on the NASDAQ under the ticker symbol "VXRT" on February 13, 2018, after a reverse merger with publicly traded Aviragen Therapeutics, Inc. Vaxart is a small company. As of December 31, 2019, it had 14 full-time employees, and only seven were engaged in research and development ("R&D").

17. Defendant Cezar Andrei Floroiu ("Floroiu") has served as a director of Vaxart since April 2020. In June 2020, Vaxart appointed Floroiu as its new Chief Executive Officer ("CEO").

3
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

18. Defendant Wouter W. Latour, M.D. ("Latour") served as Vaxart's President and Chief Executive Officer from February 2018 to June 2020. He has also served as a director from February 2018 to the present. He has served as Chairman of the Board since December 2019.

19. Defendant Steven J. Boyd ("Boyd") has served as a director of Vaxart since October 2019. Since 2012, Boyd has also served as the Chief Investment Officer of Defendant Armistice Capital. Boyd is Armistice Capital's Managing Member and its founder, principal, and owner.

20. Defendant Keith Maher, M.D. ("Maher") has served as a director of Vaxart since October 2019. He has also served as Armistice Capital's Managing Director since 2019.

21. Floroiu, Latour, Boyd, and Maher are collectively referred to herein as the "Individual Defendants."

22. Defendant Armistice Capital is a hedge fund incorporated in Delaware and based in New York, New York. At all relevant times, Armistice Capital conducted business in California. As of December 31, 2019, Armistice Capital beneficially owned approximately 52% of the voting power of Vaxart's outstanding shares of common stock and Vaxart was thus a "controlled company" within the meaning of the applicable NASDAQ listing rules at the time. Thereafter, Vaxart issued common stock to other investors during the first quarter of 2020. As of April 9, 2020, Armistice Capital held over 25 million shares of Vaxart common stock, constituting 34.5% of Vaxart's total outstanding shares. In June 2020, Armistice Capital acquired approximately 21 million shares through its warrants, which were subsequently sold for a profit of $197 million.

## SUBSTANTIVE ALLEGATIONS

### Background

23. Vaxart purports to be a vaccine developer. However, it has never brought a vaccine to market; and none of its vaccine programs have advanced beyond phase 2 clinical trials so far. As of December 31, 2019, the Company had seven employees working in R&D.

24. By the end of 2019, Armistice Capital owned 52% of Vaxart, after purchasing approximately just $2.5 million of the Company's common stock.

25. In addition to purchasing common stock, Armistice Capital also obtained common warrants for the purchase of Vaxart stock: (i) a Common Stock Purchase Warrant, issued as of

April 11, 2019, to purchase 4,090,909 shares of common stock of the Company at an exercise price of $1.10 per share (the "$1.10 Warrant"); and (ii) a Common Stock Purchase Warrant, issued as of September 30, 2019, to purchase 16,666,667 shares of common stock at an exercise price of $0.30 per share (the "$0.30 Warrant" and together, the "Original Warrants").[1]

26. In early 2020, the worldwide outbreak of COVID-19 quickly became a global pandemic. As a result, the development of a vaccine to prevent the spread of COVID-19 became a priority for the U.S. government, as well as other nations around the world.

27. On January 31, 2020, Vaxart announced that it was initiating a program to develop a COVID-19 vaccine candidate.

28. On May 15, 2020, the President Trump formally announced "Operation Warp Speed," a "national program to accelerate the development, manufacturing, and distribution of Covid-19 vaccines, therapeutics, and diagnostics (medical countermeasures)."

29. So far, seven companies, Vaxart's COVID-19 vaccine competitors, have received hundreds of millions or even over a billion dollars of federal funding to develop their vaccines. Vaxart has not received any funding from Operation Warp Speed.

30. On June 8, 2020, without stating a reason, the Company and Armistice Capital entered into amendments to the Original Warrants (the "Warrant Amendments"). The Warrant Amendments increased the beneficial ownership limitation in those instruments from 4.99%, in the case of the $1.10 Warrant, and 9.99%, in the case of the $0.30 Warrant, to 19.99% in each, effectively allowing them to be exercised at any time. The Warrant Amendments also removed the requirement to provide 60 days' notice to the Company of an increase in the beneficial ownership limitation. All other terms of the Original Warrants remained in full force and effect.

31. Also on June 8, 2020, Vaxart modified its 2019 Equity Incentive Plan and increased the number of shares of common stock reserved for issuance thereunder by 6,400,000 shares to 8,000,000 shares. Options granted to directors under the 2019 Equity Incentive Plan were "spring-loaded," given the upcoming Operation Warp Speed announcement.

---

[1] These agreements were with an affiliate, Armistice Capital Master Fund, Ltd.

32. As of June 14, 2020, Floroiu was appointed CEO of Vaxart. Under Floroiu's contract, his salary is $400,000. In addition, his "Performance-Based" stock options for 900,000 Vaxart shares vest in three tranches once the stock price hits and maintains $5.00 per share, then $7.50 per share, and then $10.00 per share.

33. On June 26, 2020, taking full advantage of the Warrant Amendments, as well as the false and misleading statements described below in ¶¶36-37, Armistice Capital exercised all of its warrants to buy 20.8 million shares of Vaxart at the respective exercise prices, which were far below market price.

34. Then, between June 26 and June 29, 2020 (two trading days), Armistice Capital sold 27.6 million Vaxart shares, reducing its overall beneficial ownership in Vaxart from 29% to 0.2% and reaping profits of approximately $197 million, a return of nearly 79 times its investment in less than a year and with no vaccine in sight.

**Materially False and Misleading Statements Issued During the Class Period**

35. In furtherance of their scheme to inflate Vaxart's stock price and enrich Armistice Capital and the Individual Defendants, Defendants made materially false and misleading statements and omissions.

36. On June 25, 2020, before the market opened, Vaxart issued a press release announcing that it had signed a memorandum of understanding ("MOU") with Attwill Medical Solutions Sterilflow, LP for the large scale manufacturing of a potential COVID-19 vaccine. The press release touted that the MOU "enable[ed] production of a billion doses Covid-19 doses per year[.]" On this news, Vaxart's stock price skyrocketed 98% in one day, from a close price of $3.19 on June 24, 2020, to a close price of $6.26 on June 25, 2020.

37. The next day, June 26, 2020, before the market opened, Vaxart issued another press release entitled, "Vaxart's Covid-19 Vaccine Selected for the U.S. Government's Operation Warp Speed" (the "Warp Speed Announcement").

38. The same day that the Warp Speed Announcement was made, President Trump also made an announcement regarding Operation Warp Speed and news channels reported on his remarks with headlines such as "Operation Warp Speed promises billions for vaccines" (CNN).

39. The Warp Speed Announcement caused Vaxart's stock price to increase 28% from its close price of $6.26 on June 25, 2020, to a close price of $8.04 on June 26, 2020.

40. The statements referenced in ¶¶36-37, above, were materially false and/or misleading because they misrepresented and failed to disclose that: (i) Vaxart was not a true "selection" of Operation Warp Speed because it was not receiving funding; and (ii) Vaxart was greatly exaggerating the state of its COVID-19 vaccine development in order to pump its share price and allow Armistice Capital to reap hundreds of millions of dollars in profits.

## The Truth Comes Out

41. On July 25, 2020, *The New York Times* published an article entitled, "Corporate Insiders Pocket $1 Billion in Rush for Coronavirus Vaccine." The article reported that Vaxart's press release brazenly claimed that "Vaxart's Covid-19 Vaccine Selected for the U.S. Government's Operation Warp Speed," while "the reality is more complex":

> Vaxart's vaccine candidate was included in a trial on primates that a federal agency was organizing in conjunction with Operation Warp Speed. But Vaxart is not among the companies selected to receive significant financial support from Warp Speed to produce hundreds of millions of vaccine doses.
>
> "The U.S. Department of Health and Human Services has entered into funding agreements with certain vaccine manufacturers, and we are negotiating with others. Neither is the case with Vaxart," said Michael R. Caputo, the department's assistant secretary for public affairs. "Vaxart's vaccine candidate was selected to participate in preliminary U.S. government studies to determine potential areas for possible Operation Warp Speed partnership and support. At this time, those studies are ongoing, and no determinations have been made."

42. The article further explained that, "Vaxart's vaccine candidate was included in a trial on primates that a federal agency was organizing in conjunction with Operation Warp Speed. But Vaxart is not among the companies selected to receive significant financial support from Warp Speed to produce hundreds of millions of vaccine doses."

43. The article also reported that "[s]ome officials at the Department of Health and Human Services have grown concerned about whether companies including Vaxart are trying to inflate their stock prices by exaggerating their roles in Warp Speed [and the Department] has relayed those concerns to the Securities and Exchange Commission." The article also discussed

how Vaxart's hedge fund owner had been engaged in highly questionable transactions, including the June 8, 2020 change to its warrants and subsequent sales of enormous amounts of stock.

44. On this news, the price of Vaxart stock dropped over 11% from its previous close price on July 23, 2020, of $13.85 to a close price of $12.29 on July 27, 2020, the next trading day.

45. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and the other Class (defined below) members suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

46. Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all those who purchased or otherwise acquired Vaxart common stock during the Class Period and were damaged upon the revelation of the alleged corrective disclosure (the "Class"). Excluded from the Class are the Defendants named herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

47. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vaxart common stock was actively traded on the NASDAQ exchange. While the exact number of Class members is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Vaxart or its transfer agent and/or NASDAQ and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Vaxart;

(c) whether the Individual Defendants caused Vaxart to issue false and misleading statements during the Class Period;

(d) whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

(e) whether the prices of Vaxart common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

52. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**PRESUMPTION OF RELIANCE**

53. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

  (a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

  (b) the omissions and misrepresentations were material;

  (c) Vaxart common stock is traded in an efficient market;

  (d) the Company's common stock is liquid and traded with moderate to heavy volume during the Class Period;

  (e) the Company's common stock traded on the NASDAQ exchange in the United States;

  (f) the Company was covered by securities analysts;

  (g) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

  (h) Plaintiff and members of the Class purchased, acquired, and/or sold Vaxart common stock between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed without knowledge of the omitted or misrepresented facts.

54. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

55. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I
### Violations of §10(b) of the Exchange Act and Rule 10b-5
### (Against All Defendants)

56. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57. This Count is asserted against Defendants and is based upon §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

58. During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business that operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Vaxart securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Vaxart securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

59. Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated, directly or indirectly, in the preparation and/or issuance of the annual reports, SEC filings, press releases, and other statements and documents, as described above, including statements made to securities analysts and the media, that were designed to influence the market for Vaxart securities. Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Vaxart's business and operations.

60. By virtue of their positions at Vaxart, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted, as described above.

61. The Individual Defendants and Armistice Capital are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants and Armistice Capital were able to, and did, directly or indirectly, control the content of the statements of Vaxart. As officers and/or directors of a publicly held company or controlling shareholder, the Individual Defendants and Armistice Capital had a duty to disseminate timely, accurate, truthful, and complete information with respect to Vaxart's business and capabilities. As a result of the dissemination of the aforementioned false and misleading public statements, the market price of Vaxart common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Vaxart's business, which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Vaxart common stock at artificially inflated prices and relied upon the price of the securities, integrity of the market for the securities, and/or statements disseminated by Defendants and were damaged thereby.

62. During the Class Period, Vaxart common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired Vaxart stock at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Vaxart common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Vaxart common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63. By reason of the conduct alleged herein, Defendants have knowingly or recklessly, directly or indirectly, violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions, and sales of the Company's stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**
**Violations of §20(a) of the Exchange Act**
**(Against the Individual Defendants and Armistice Capital)**

65. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66. This Claim is brought against the Individual Defendants and Armistice Capital for control person liability under §20(a) of the Exchange Act.

67. During the Class Period, the Individual Defendants and Armistice Capital participated in the operation and management of Vaxart and conducted and participated, directly and indirectly, in the conduct of Vaxart's business affairs. Because of their senior positions at and/or control of the Company, the Individual Defendants and Armistice Capital knew the truth about Vaxart's business and the scheme to artificially inflate the Company's stock price.

68. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, with respect to Vaxart's business, and promptly correct any public statements issued by Vaxart that had become materially false or misleading. Because of its control over Vaxart as majority shareholder, Armistice Capital also owed this duty.

69. Because of their position of control and authority, as senior directors or officers or as controlling shareholder, the Individual Defendants and Armistice Capital were able to, and did, control the contents of the various press releases and public filings that Vaxart disseminated in the marketplace during the Class Period concerning the Company's business and capabilities. Throughout the Class Period, the Individual Defendants and Armistice Capital exercised their power and authority to cause Vaxart to engage in the wrongful acts complained of herein. The Individual Defendants and Armistice Capital, therefore, were "controlling persons" of Vaxart within the meaning of §20(a) of the Exchange Act. In these capacities, the Individual Defendants and Armistice Capital participated in the unlawful conduct alleged herein that artificially inflated the market price of Vaxart common stock.

70. By reason of the above conduct, the Individual Defendants and Armistice Capital are liable pursuant to §20(a) of the Exchange Act for the violations committed by Vaxart.

### COUNT III
### Violations of §20A of the Exchange Act
### (Against Armistice Capital and Steven Boyd)

71. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

72. This Claim is brought against Armistice Capital and its principal, Boyd, under §20A of the Exchange Act, 15 U.S.C. §78t-1.

73. Armistice Capital knew, recklessly disregarded, or should have known that it issued material, adverse non-public information and that it owed a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, to Vaxart to keep this information confidential.

74. Nevertheless, while in possession of this material, non-public adverse information, Armistice Capital sold approximately 27.6 million shares of Vaxart.

75. By virtue of the foregoing, Armistice Capital, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the U.S. mails, or a facility of a national securities exchange, directly or indirectly:

   (a) employed devices, schemes, or artifices to defraud;

   (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

   (c) engaged in acts, practices, or courses of business that operated, or would have operated, as a fraud or deceit upon persons.

76. Armistice Capital and Boyd have thereby violated §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

77. By virtue of the foregoing, Armistice Capital and Boyd are jointly and severally liable to Plaintiff and the Class for Armistice Capital's insider sales pursuant to §20A of the Exchange Act, 15 U.S.C. §78t-1.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Fed. R. Civ. P. 23 and certifying Plaintiff as Class Representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class pre- and post-judgment interest, as well as reasonable attorneys' fees, expert fees, and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

DATED:  September 1, 2020

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 /s/ John T. Jasnoch
JOHN T. JASNOCH (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone:  619/233-4565
619/233-0508 (fax)
jjasnoch@scott-scott.com

THOMAS L. LAUGHLIN, IV (*pro hac vice* forthcoming)
RHIANA L. SWARTZ (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212/233-6444
212/233-6334 (fax)
tlaughlin@scott-scott.com
rswartz@scott-scott.com

*Attorneys for Plaintiff Ani Hovhannisyan and the Proposed Class*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS